U̲N̲I̲T̲E̲D̲  S̲T̲A̲T̲E̲S̲  D̲I̲S̲T̲R̲I̲C̲T̲  C̲O̲U̲R̲T̲          S̲O̲U̲T̲H̲E̲R̲N̲  D̲I̲S̲T̲R̲I̲C̲T̲ O̲F̲  T̲E̲X̲A̲S̲

| | | |
|---|---|---|
| Thomas Holladay, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-07-1492 |
| | § | |
| Metropolitan Life Insurance Co., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.   *Introduction.*

A worker sues his benefit plan to continue his long-term disability payments. Because the plan established that the beneficiary did not supply it with objective evidence to justify a long-term payments, the plan's motion for summary judgment will be granted.

2.   *Background.*

Thomas Holladay worked for Siemens Corporation as a senior systems specialist. In September of 2001, Holladay injured his back lifting a box. Holladay stopped working because of his back and filed for long-term disability benefits. Holladay agreed with the plan to reimburse overpayment of his benefits.

The plan notified Holladay of the two-year limitation on neuromusculoskeletal benefits. For his condition, Holladay was entitled to benefits two years from the disability or for as long as he could substantiate his disability. MetLife, the plan's third-party administrator, approved Holladay's claim and gave him benefits, starting October 29, 2003, and ending on May 1, 2005.

The plan ended the disability benefits within the two-year limitation because it found that Holladay had no objective support for his radiculopathy. Holladay filed two appeals, and both were denied. Holladay now sues to reverse the plan's denial.

3.  *The Plan.*

An ERISA judgment is enforceable solely against the employee benefit plan. 29 U.S.C. § 1132(d)(2). The only proper party in an ERISA dispute is the plan, not Siemens. *See Pickett v. Cigna Healthplan of Texas*, 742 F.Supp. 946 (S.D. Tex. 1990).

4.  *Standard of Review.*

Decisions are reviewed under a de novo standard unless the plan gives the administrator discretion to determine eligibility for benefits. *See Keele v. JP Morgan Chase Long Term Disability Plan*, 221 Fed. Appx. 316, 319 (5th Cir. 2007). If the plan gives discretion, the court will review an administrator's decision for abuse of discretion. The plan's decision will be upheld unless the administrator acted arbitrarily. The administrator's decision is not arbitrary if it is supported by substantial evidence. The court's review is limited to the facts in the record that were available to the administrator. *See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).

Where the administrator is self-interested because it both insures and administers the plan, the court will apply a sliding scale standard, reducing judicial deference typically accorded to the administrator. *See Corry v. Liberty Life Assur. Co.*, 499 F.3d 389, 397 (5th Cir. 2007). If the claimant does not present evidence to support an allegation of the administrator's self-interest, the court may review the administrator's decision with less deference.

Although MetLife is both the administrator and the insurer of the plan, the standard of review remains one of arbitrariness, because Holladay did not submit further evidence to show that MetLife had a conflict of interest.

5.  *Termination of Benefits.*

The plan's decision to apply the two-year limitation was not arbitrary. A claimant is covered up to two-years if the disability is a neuromusculoskeletal or soft tissue disorder of the spine. The benefit will continue if Holladay can persuade the administrator with objective evidence that he suffers from radiculopathy.

MetLife reviewed the current medical reports by Holladay's doctors before it ended his benefits. Doctor James Stonecipher, an independent practitioner, reviewed Holladay's MRI and found it was unremarkable. Holladay had another MRI, and Doctor Wargo found that it did not reveal a thoractic pathology. Neither doctor was able to determine the origin of Holladay's

asserted pain, but both of them concluded that the tests did not support a diagnosis of radiculopathy.

In early 2003, Holladay was also evaluated for his worker's compensation impairment rating by Doctor Uma R. Gullapallia. As the other independent doctors similarly determined, Holladay's MRIs were normal and unremarkable.

In early 2004, Holladay's family practitioner, Doctor Leila Vizirov, submitted an attending physician statement to MetLife, and marked that his primary diagnoses were back pain and thoracic radiculopathy. The statement called for Vizirov to list "objective findings" to support her diagnosis, but she did not do so. Holladay continued to see her, and she reported that Holladay suffered from thoracic radiculopathy. She supported her diagnosis with her observation of Holladay's limited range of motion. When MetLife asked for an update on Holladay's medical status, Vizirov sent another attending physician statement. Vizirov diagnosed Holladay with thoracic radiculopathy, but again Dr. Vizirov left the "objective findings" section blank.

Doctor Paul Roquet, another independent physician, also examined Holladay. He found that Holladay's MRI revealed no abnormalities, and that Holladay had reached maximum medical improvement by mid-2004. If anything, he found that Holladay suffered from chronic right hemithoracic pain, anxiety, and depression.

These medical reports were sent to MetLife, who had an independent nurse-consultant review the files. The nurse-consultant found that his file did not contain objective support of thoracic radiculopathy.

MetLife also hired two independent medical consultants to review Holladay's file to determine whether it had objective evidence of radiculopathy. Doctor Rudnicki, a specialist in rheumatology and internal medicine, noted that the MRI dated August 14, 2002, revealed no abnormalities. While Rudnicki did not mention radiculopathy in his conclusion, numerous qualified, medical opinions in the record substantiated that there was no objective evidence of radiculopathy in the file. Doctor Frank Nisenfeld, a specialist in orthopedic surgery, also found that the images were normal and that the file lacked objective support of radiculopathy.

Based on these findings, MetLife's decision to apply the two-year limitation and terminate Holladay's disability benefits was not arbitrary.

6.      *Recovery of Overpayment.*

The administrator has the right to recover the excess when the beneficiary has been

overpaid. Overpayment may result when the worker receives other income, including social security, salary, and workers' compensation. Holladay received those plus disability payments from October 29, 2003, to May 1, 2005. He was, therefore, overpaid $12,144.61.

MetLife applied the final disability payment of $1,241.61 to this overpayment, reducing it to $10,903.00.

7.  *Breach of Fiduciary Duty.*

A claim for breach of fiduciary duty against a plan may only be asserted when no remedy is available under ERISA. *See generally, Varity Corp. v. Howe*, 516 U.S. 489, 510-16 (1996). Because Holladay has asserted an ERISA claim, he is precluded from bringing a separate claim for breach of fiduciary duty.

8.  *Conclusion.*

Being supported by substantial evidence, the administrator's denial of Thomas Holladay's long-term disability benefits will, therefore, be affirmed. MetLife is entitled to recover the overpayment of benefits paid to Holladay in the amount of $10,903.00, plus interest.

Signed on April 9, 2008, at Houston, Texas.

Lynn N. Hughes    USDJ
United States District Judge